IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA )  )  ) | |
| v. ) | Criminal No. 4:20 CR 18 (EKD) |
| )  )  ) | |
| ALAN JAX WAGONER ) | |

**Defendant's Objection to Court Leaving Bench During Proceeding and Directing Defense Counsel to Proffer to Empty Bench**

Out of concern that either this Court or a reviewing court will interpret silence as acquiescence, Mr. Wagoner, by counsel, hereby notes his objection to this Court leaving the courtroom during the recent suppression hearing in this case and requiring counsel to proffer to an empty bench.

**Relevant Factual Background**

Mr. Wagoner moved to suppress evidence seized from his truck during an encounter with the Henry County Sheriff's Department officers in the early morning hours of January 20, 2020. The motion focused on the purported observations of officers involved in the encounter which culminated in a search of Mr. Wagoner's pick-up truck. Whether these officers are telling the truth in asserting that they saw firearms in the truck before they searched the truck is the critical issue in the case and was the focus of the evidentiary hearing before this Court on August 23, 2021. In the course of that hearing, undersigned counsel questioned Deputy Hambrick, who was involved in the encounter with Mr. Wagoner. Deputy Hambrick testified in response to government counsel's questions that he saw firearms in "plain view" in the truck before the search. On cross-examination

undersigned counsel sought to probe why Deputy Hambrick's body camera and cruiser camera did not capture his account of seeing weapons in plain view.

During the hearing, the defense learned that Deputy Hambrick claimed to have taken photographs of the firearms in the truck, but that the photographs were later destroyed. No information about this was provided in discovery or as *Jencks* material. Deputy Hambrick also testified that his body camera footage was somehow truncated and that the footage capturing his view of the firearms was somehow inadvertently lost. Finally, Deputy Hambrick testified that his vehicle's cruiser camera did not record or was broken, and that it had not been recording for nearly one year. The defense was unaware of any of this information until Deputy Hambrick testified. As a result, counsel engaged in a *Jenks* inquiry to attempt to discover if any writings existed that could corroborate or refute the Deputy's claims.[1]

Specifically, counsel pursued a line of inquiry focusing on whether Deputy Hambrick had ever written anything about his malfunctioning dash camera or body camera. The government objected, and the court sustained the objection without allowing counsel to explain the basis for the inquiry. Here is the relevant portion of the record:

Q: Did you write anything down at any time that indicated that the camera was broken?

Ms. Johnson: Objection, Your Honor, whether –

The Court: Sustained. Sustained.

---

[1] Counsel's questioning also focused on the candor of the witness and on the US Attorney's Office compliance with providing discovery, *Jenks* material, and *Giglio* material. Only after several requests and a lengthy hearing did the government bother to look at Deputy Griffith's personnel file. And only after that review did the government provide *Giglio* material directly relevant to Deputy Griffith's credibility. In this case, the only evidence that Mr. Wagoner had firearms in his truck in plain view comes from the testimony of two officers who were wearing body cameras whose cameras did not capture their actions finding the firearms. Moreover, one officer now claims to have taken photographs that would directly corroborate his claims, and yet those photographs, like the body camera footage, have disappeared. If writings exist related to the officer's claims, they are not only discoverable, but likely exculpatory.

Mr. Schiffelbein: I'm trying to—Okay. I'm going to move under Rule 26.2 for the production of *Jencks* material here. I find it highly dubious that this department realizes that there's camera footage that isn't recording, that doesn't exist for more than a year, and there's no note, there's nothing written in any file? I just don't believe that.

Ms. Johnson: Your Honor, this is completely irrelevant. The government is not aware of any *Jencks* material under Rule 26.2 that speaks to this issue. And the fact that this officer noticed a year and a half ago that there was something wrong with his dash cam video has no bearing on the issues before the Court.

The Court: Let's just move on to the issues before the Court today.

Mr. Schiffelbein: I am.

The court, rather than entertaining oral argument regarding the *Jencks* Act issue, allowed that counsel could "file a written motion in support of [counsel's oral motion to compel statements pursuant to Rule 26.2] . . . ." Counsel attempted to explain why the questioning was relevant and why requesting additional briefing was not the appropriate course of action given that the witness was on the stand and the Act requires disclosure to facilitate questioning the witness.[2] The court did not permit counsel to make an argument. The relevant exchange is below:

The Court: And, Mr. Schiffelbein, if you would like to file a written motion and support that, you are welcome to do so.

Mr. Schiffelbein: Well, I mean, I can file a written motion, but Rule 26.2 clearly states that after a witness has testified—

The Court: Yes. And you've made your verbal motion and I'm asking you to follow up and you can brief that motion. All right?

Mr. Schiffelbein: I can do so, but then I'm going to ask the Court to suspend the proceedings. The purpose of Rule 26.2 and *Jencks* is that I can effectively—

---

[2]Defense counsel was relying on black letter law that counsel may inquire into whether a witness created statements in order to solicit information necessary to establish the foundation for a further *Jencks* request. *See, e.g., United States v. Boyd*, 53 F.3d 631, 634 (4th Cir. 1995) ("[s]uch foundation [for a further *Jencks* request is] typically established through cross examination of the witness whose statement the defendant is attempting to obtain . . .").

The Court: We are going forward with these proceedings, Mr. Schiffelbein. I've sustained the objection. You've noted your request. We are moving forward.

Mr. Schiffelbein: I would just like to make a record here. The purpose of Rule 26—

The Court: And I'm allowing you to make a record in writing also because I know you have an issue if the Court doesn't allow you to argue everything properly. And I want to give you the full opportunity to make argument, Mr. Schiffelbein. But we are moving on today with regard to this hearing, and you're welcome to file anything in your brief with regard to following up on this motion. But we're moving on with this hearing today.

Mr. Schiffelbein. I understand, Your Honor. The record I would like to make is why it's insufficient to allow the proceeding to go forward and to allow me to supplement later.

This Court, in response, quite unexpectedly rose from the bench and left the courtroom with the parting instruction: " . . . you may proffer that while I'm out of the courtroom." Thereafter, with court still in session, undersigned counsel did as instructed—gave an offer of proof in a courtroom with all in attendance except the presiding judge:

Mr. Schiffelbein: The purpose of Rule 26.2 and the purpose of the Jencks Act, which was passed by Congress, was to allow for a fair cross examination of the government's witnesses, or for anybody's witnesses for that matter. The reason that the rule does not require supplemental briefing after the cross examination has finished is because that would not allow for the purpose of the rule to be done by getting the material. If the Court is not allowing me to get *Jencks* material before the cross examination, or during it, there is no benefit to me getting it later and supplementing the record unless the Court would allow us to reopen the hearing.
I'm done. Thank you.

**Objection**

The "fundamental requirement of due process [is] the opportunity to be heard . . ." *Mathews v. Eldridge*, 424 US 319, 333 (1976). Every person, especially one charged with a crime, is entitled to a judge who will allow that person to be "heard." In leaving the bench and instructing Mr. Wagoner's counsel to present his argument for why his request was both relevant and timely, this Court violated this basic principle. It conveyed the message to Mr. Wagoner that whatever his counsel had to say did not and would not matter. And we must object on Mr. Wagoner's behalf.

We have searched the federal cases in vain for a case with similar facts. There are cases involving judges who left the courtroom briefly during closing to a jury or during a jury's review of evidence. *See Riley v. Deeds*, 56 F.3d 1117, 1120 (9th Cir. 1995) (discussing cases in which judges left the courtroom at various points; *United States v. Solon*, 59 F.3d 1206 (10th Cir. 2010) (defense failed to establish plain error where judge briefly left courtroom during counsel's closing argument); 23A C.J.S. *Criminal Procedure and Rights of Accused* § 1645 ("[t]he trial judge should be present where a motion or other matter develops that requires personal knowledge of the case"). But we found no case where a federal judge just left the courtroom and directed a litigant to make an argument to an empty bench, as occurred in this case.

The Indiana Supreme Court considered a similar issue in *Bedolla v. State*, 123 N.E. 3d 661 (Ind. 2019). In that case, the trial judge refused to allow a party's lawyer to make an offer of proof. The court found this to be an abuse of discretion:

> Part of a judge's job is to listen. *In re Van Walters v. Bd. of Children's Guardians of Marion Cty.*, 132 Ind. 567, 571, 32 N.E. 568, 569 (1892) (stating judges must "hear with deliberation, act with impartiality, and decide upon the law and the evidence") (emphasis added). When a judge refuses to hear a party's offer to prove, she not only abdicates the duty to listen, but she calls into question the principle of fundamental fairness, which requires that parties, particularly those bearing the burden of proof, receive every reasonable opportunity to make their case. *Hirsch v. State*, 697 N.E.2d 37, 43 (Ind. 1998). Today we hold that a post-conviction court abuses its discretion when it denies a party's legitimate request to make an offer of proof

*Id.* at 663.

Here, of course, Mr. Wagoner was permitted to make his argument. But he watched his attorney do so (as instructed) in a courtroom devoid of the person for whom the argument was intended. He, indeed, was watching his attorney "wail[] in the wind" as government counsel indelicately put it. Transcript of Proceedings at 118. And that should not have happened. We must object.

Respectfully submitted,
By: /s/ Benjamin M. Schiffelbein

Benjamin M. Schiffelbein, Esquire
Asst. Federal Public Defender
NH Bar No. 267593
210 First Street SW, Room 400
Roanoke, Virginia 24011
Ph. (540) 777-0880
Fax (540) 777-0890
Benjamin_Schiffelbein@fd.org


Randy Virlin Cargill
Asst. Federal Public Defender
Virginia Bar No. 23811
Counsel for Mr. Wagoner

**Certificate of Service**
I certify that I filed this motion through the court's CM/ECF system on September 17, 2021.