IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Criminal Action No. 4:20-cr-00018 |
| v. | ) | |
| | ) | By: Elizabeth K. Dillon |
| ALAN JAX WAGONER | ) | United States District Judge |

**MEMORANDUM OPINION**

Defendant Alan Jax Wagoner is detained on a three-count indictment (Dkt. No. 62) stemming from a January 2020 traffic stop that led to the discovery of firearms and ammunition in his truck. Wagoner has filed a motion for review (Dkt. No. 181) of United States Magistrate Judge Robert S. Ballou's February 1, 2022 order (Dkt. No. 182) denying his release from detention pending trial. The court finds that there is no need for an evidentiary hearing on the motion. For the following reasons, the court finds that no combination of conditions "will reasonably assure … the safety of any other person and the community …. 18 U.S.C. § 3142(e)(1). Therefore, the motion will be denied.

I.  BACKGROUND

In January 2020, law enforcement officers performed a traffic stop on Wagoner after receiving a call about a suspicious vehicle. Wagoner exited his vehicle and walked away, disregarding the officers' commands to stop. After apprehending Wagoner, the officers found two firearms in the cab of the truck and several more firearms and ammunition in the bed.

Wagoner is charged in the second superseding indictment with knowingly possessing firearms after being convicted of a felony, knowingly possessing a firearm made from a shotgun with an overall length of less than 26 inches and a barrel of less than 18 inches in length that is

not registered to him, and knowingly possessing ammunition after being convicted of a felony. (Dkt. No. 62.)

The magistrate judge concluded a bond hearing on May 20, 2021[1], and he entered an order of detention on June 1, 2021. (Dkt. No. 57.) At the hearing, the government called special agent (SA) Francesco Boccieri with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) to testify. SA Boccieri testified about the January 2020 traffic stop incident, wherein officers responded to a call about a suspicious vehicle. (*See* Dkt. No. 53 at 13.) They observed a truck towing a van with a chain. (*Id*. at 14.) The van then became unattached from the truck, and the truck continued despite emergency lights. (*Id*.) At some point, the truck drifts into the opposite lane of traffic. (*See* Dkt. No. 54 at 12.) When the truck stopped, Wagoner left the vehicle, began walking away, and continued to do so after being ordered to stop. (*See* Dkt. No. 53 at 14.) He began running after the mention of pepper spray and was apprehended with force. (*Id*. at 14–15.) According to SA Boccieri, officers found firearms and ammunition in plain view. *(Id*. at 15.) A search warrant was obtained, and there were approximately ten firearms and a thousand rounds of ammunition – all with varying degrees of fire damage.[2] (*Id*. at 15–16.) Some ammunition, however, was still intact. (*Id*.) There had been a fire at Wagoner's residence the night before the stop. (*Id*. at 16.) Firefighters at the scene of the residence heard ammunition exploding. (*Id*.)

SA Boccieri also testified that Wagoner was on probation at the time of the stop. (Id. at 20.) Further, Wagoner had four felony convictions, including a conviction for possessing a "sawed-off firearm" stemming from tense encounters with the Henry County Sheriff's Office

---

[1] The bond hearing was initiated on May 10, 2021; however, it was continued and concluded on May 20, 2021. (Dkt. Nos. 41, 46.)

[2] No video or photographs show the weapons or ammunition at the time of the stop or the search.

2

(HCSO) in October 2018. (*Id.* at 19.) Specifically, SA Boccieri testified about a three-hour standoff HCSO had with Wagoner in October 2018, which ultimately ended when officers used an armored vehicle to forcibly open the door to Wagoner's residence. (*Id.* at 20.) Wagoner was convicted of a felony in relation to the incident. (*Id.*) Law enforcement had also attempted to serve Wagoner with a warrant in 2019 when he crouched down and crawled away. (*Id.*)

The magistrate judge found that Wagoner was a danger to the community by clear and convincing evidence. (Dkt. No. 54 at 48.) He noted that the case against Wagoner involved firearms; Wagoner's prior convictions, including the illegal possession of a firearm; the strength of the government's case; and Wagoner's noncompliance with law enforcement officers on multiple occasions. (Dkt. No. 54 at 47–48.) Wagoner was ordered detained until trial.

On December 22, 2021, Wagoner filed a motion for bond review by the district court. (Dkt. No. 171.) Given that the motion asserted no error in the June 1, 2021 order and asked the court to consider new video evidence capturing part of an October 2, 2018 incident between Wagoner and HCSO, this court construed Wagoner's motion as a request to reopen the hearing pursuant to 18 U.S.C. § 3142(f) and referred the order to the magistrate judge.[3] (Dkt. No. 173.)

The magistrate judge reopened the bond hearing on January 19, 2022. (Dkt. No. 178.) The defendant offered the new video evidence from October 2, 2018. (Def.'s Ex. A, Dkt. No. 175-1.) The government called three law enforcement officers to testify: (1) SA Jerre Harvard of Homeland Security Investigations (HSI); (2) Charles Curtis of HCSO; and (3) Travis Hambrick of HCSO. Both parties asked the magistrate judge to consider the transcripts from the prior hearing and the previous pre-trial services report.

---

[3] Wagoner objected to the referral of his motion to the magistrate judge. (Dkt. No. 175.) The court considered that objection a motion for reconsideration and denied it. (Dkt. No. 177.)

3

The magistrate judge reviewed the new video evidence, which contained body camera footage from the encounter HCSO officers had with Wagoner on the morning of October 2, 2018—one day before the three-hour standoff that resulted in a conviction for illegal possession of a firearm.  At the start of the video, the officers approach a residence. (Def.'s Ex. A, Dkt. No. 175-1.)  Wagoner was outside the residence, shirtless and holding an AR-15. (*Id.* 1:00.)  The leading officer, later identified as HCSO Investigator Charles Curtis, approached and engaged Wagoner about a complaint the officers received about gunshots coming from his residence.  (*Id.* 3:15.)  Investigator Curtis asked to see the AR-15; Wagoner complied.  (*Id.* 3:40.)  Approximately halfway through the video, another HCSO officer, later identified as Lieutenant White, appeared on the scene.  Lt. White screamed obscenities at Wagoner for shooting the automatic weapon at the time-of-day children were boarding a school bus nearby.  (*Id.* 8:00.)  The officer screamed, "I don't want to f___ with you Alan, but if you want someone to f___ with you, I'll start."  (*Id.* 9:05.)  Wagoner's friend intervened to diffuse the situation, but Lt. White shoved her away.  (*Id.* 9:11.)  Lt. White said "he'd make sure everybody knew" about what Wagoner was doing on his property.  (*Id.* 10:40.)  Investigator Curtis continued to speak with Wagoner and then shook his hand.  (*Id.* 12:50.)  As Lt. White left the scene, he said, "I've never come over here or bothered you before…. Just use your common sense, and I won't come back over here."  (*Id.* 14:20.)  The officers returned Wagoner's AR-15 and left the residence.  (*Id.* 14:55.)

HCSO Investigator Charles Curtis testified about HCSO's encounters with Wagoner on October 2 and October 3, 2018.  Investigator Curtis was the lead officer on the encounter with Wagoner at his residence on October 2, 2018, and was the officer that recorded the body camera evidence.  Investigator Curtis testified that the officers approached Wagoner's residence that

morning after receiving a call about shots fired in the area. (*Id.* 22:30.) He testified that as the officers approached the residence, Wagoner stepped out with an AR-15 and "charged" the weapon, placing a round in the chamber, which, he admits, cannot be seen on the video. (*Id.* 24:50.) At this point, Investigator Curtis engaged Wagoner about the shooting; Wagoner explained he was test firing his AR-15. (*Id.* 26:35.) Wagoner handed Curtis the AR-15, which had a round in the chamber. (*Id.* 27:40.) At that point, Lt. White of HCSO arrived on the scene. (*Id.* 29:40.) Lt. White lived near Wagoner and was irate that Wagoner was firing the AR-15 while kids were nearby. (*Id.*) Consistent with the video evidence, Curtis testified White screamed obscenities at Wagoner and pushed Wagoner's friend. (*Id.* 35.25.) Curtis noted that he reported the incident to his superior; White was demoted because of the incident, and he later left HCSO. (*Id.* 30:25, 36:20.) The officers did not arrest Wagoner, returned his gun, and left the residence. (*Id.* 30:40.)

Investigator Curtis testified that later that day another officer watched the body camera footage from the encounter. (*Id.* 31:45.) That officer noticed the barrel of the AR-15 looked short, and the officers processed a search warrant for Wagoner's residence and the firearm. (*Id.* 32:15.)

Lieutenant Travis Hambrick testified that on October 3, 2018, HCSO SWAT team executed the search warrant. (*Id.* 41:00.) Investigator Curtis testified that the officers attempted to call Wagoner on the phone and communicate with him over a loudspeaker; however, Wagoner remained barricaded in his home for almost three hours. (*Id.* 32:45.) Ultimately, the officers used gas and an armored vehicle to gain access to the residence. (*Id.* 33:20.) Wagoner was arrested and convicted for possession of a short-barreled rifle. (*Id.* 33:30.) Additionally, Lt.

Hambrick testified that Wagoner faced state charges for smuggling contraband drugs into the jail. (*Id.* 45:40.)

SA Harvard testified that, in 2019, he was advised by Customers and Border Protection that there was a package interdicted from China addressed to Wagoner—it was labeled as fuel filter but contained a suppresser. (Bond Rev. Hearing[4] 11:05.) Wagoner could not lawfully possess a suppresser at the time. (*Id.* 12:45.) The suppresser was never delivered to Wagoner because SA Harvard determined that a controlled delivery would be unsafe due to Wagoner's previous encounters and noncompliance with HCSO. (*Id.* 13:15.) As part of SA Harvard's investigation, he interviewed a friend of Wagoner's mother. (*Id.* 15:20.) The friend said she saw Wagoner with guns, and she knew Wagoner to "process" drugs and distribute guns. (*Id.* 15:28.)

The magistrate judge found that Wagoner was a danger to the community by clear and convincing evidence. The magistrate judge noted the evidence from October 2018 was now stronger because of the testimony of Investigator Curtis and Lt. Hambrick. He found that while Wagoner was cooperative on October 2, 2018, it was even clearer now that he was uncooperative on October 3, 2018, despite an obligation to comply with law enforcement and a valid search warrant. (*Id.* 1:04:05–1:06:30.) The magistrate judge also considered the number of firearms found on Wagoner, Wagoner's continued criminal history, and his lack of cooperation in the arrest in the instant case. (*Id.*) Wagoner was ordered detained until trial.

On January 19, 2022, Wagoner filed a motion for district court review of the magistrate judge's decision pursuant to 18 U.S.C. § 3145(b). In the motion, Wagoner argues that there is a

---

[4] The hearing was conducted over Zoom video conference and recorded for court reporter purposes. The court has listened to the audio of the hearing in full.

6

set of conditions[5] that can reasonably assure the safety of the community given his criminal history is largely nonviolent and his uncooperative behavior is limited to one law enforcement body that he argues has "been unprofessional in its dealings" with him. The magistrate judge entered the order denying Wagoner's bond.

## II. DISCUSSION

### A. Legal Standards

If a person is ordered detained by a magistrate judge, the person "may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order. The motion shall be determined promptly." 18 U.S.C. § 3145(b). The district court conducts a de novo review of a magistrate judge's detention order. *United States v. Clark*, 865 F.2d 1433, 1436 (4th Cir. 1989). In conducting its de novo review, the court may rely on the record below and is not required to conduct an additional evidentiary hearing. *See United States v. Jackson*, No. 7:19-cr-126, 2016 WL 4689144, at *1 (E.D.N.C. Sept. 25, 2019) ("The court may conduct a further evidentiary hearing if it is necessary or desirable in carrying out the review.") (citing *United States v. Williams*, 753 F.2d 329, 333 (4th Cir. 1985)); *United States v. Koenig*, 912 F.2d 1190, 1192 (9th Cir. 1990) (holding district court has discretion on whether to conduct a further evidentiary hearing).

### B. Wagoner's Motion for Review[6]

In this case, the government seeks detention under 18 U.S.C. § 3142(f)(1)(E), arguing that Wagoner, if he were released, would pose a danger to the community. In making that

---

[5] Wagoner specifically proposes that conditions such as electronic monitoring, curfew, or house arrest would be sufficient to reasonably assure the safety of others and the community. (Def.'s Mot. for Bond Review 2, Dkt. No. 181.)

[6] The court has closely considered the pretrial bail report, the transcripts from the May 2021 bond hearing, the new video evidence, and an audio recording of the January 19, 2022 bond hearing. The court concludes that any further hearing or argument is unnecessary.

determination, the court must consider: (1) the nature and circumstances of the offense; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant;[7] and (4) the nature and seriousness of the danger that the defendant's release would present to any person. 18 U.S.C. § 3142(g).  Wagoner is charged with offenses that do not contain a rebuttable presumption in favor of detention.  "[T]he government must [therefore] convince a neutral decisionmaker by clear and convincing evidence that no conditions of release can reasonably assure the safety of the community or any other person." *United States v. Salerno*, 481 U.S. 739, 750 (1987).

The nature and circumstances of the instant offenses are consistent with Wagoner's history.  In this matter, Wagoner did not comply with law enforcement.  Law enforcement ordered him to stop, but Wagoner continued to walk away from his vehicle after being pulled over, requiring the officers to physically restrain him.  This is consistent with Wagoner's history of noncompliance with law enforcement.  For example, Wagoner was noncompliant during the October 3, 2018 standoff with HCSO that lasted for over two hours and required the use of gas and an armored vehicle.  Additionally, the charges against Wagoner for illegal possession of several firearms and rounds of ammunition are consistent with past convictions for possessing unlawful firearms and substances.  (*See* Dkt. No. 8 at 2–5.)  The court notes that while Wagoner is charged with mere possession, firearm offenses are serious.

---

[7] This includes the defendant's character, physical and mental condition, family and community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings, as well as whether the crime was committed while the defendant was on probation or parole.  18 U.S.C. § 3142(g)(3)(A) & (B).

Wagoner's broader history also supports a finding that he is a danger. He has several felony convictions and other offenses on his criminal record.[8] Wagoner has made clear that he will not comply with law enforcement or the courts. In addition to the October 3, 2018 standoff and the traffic stop in this case, Wagoner failed to comply with the terms of probation when he was arrested in the instant case. There is also at least one other incident of noncompliance with law enforcement alluded to in the evidence. Further, while incarcerated on another offense, Wagoner was convicted of three counts of possessing an unlawful chemical. Wagoner was also the subject of a HSI investigation into a suppresser found in a package addressed to him, even though he could not lawfully possess one. Even though the court finds that Wagoner was compliant during the October 2, 2018 incident, there was testimony that Wagoner charged the weapon as officers were approaching, a clearly hostile act. Further, while Wagoner might be justified in believing that Lt. White, who was subsequently demoted, harbored hard feelings towards him, the other officers on the scene that day appeared calm, understanding, and reasonable. As the magistrate judge noted in his reasoning, Wagoner still had an obligation to comply with legitimate law enforcement orders, including a valid search warrant, in his subsequent encounters with the HCSO. Wagoner has repeatedly not complied with law enforcement. The evidence belies the idea that Wagoner would comply with a set of conditions for release.

Finally, while Wagoner is presumed innocent of the instant offenses, the court notes that the evidence that Wagoner possessed several firearms and rounds of ammunition is strong.

In sum, all of the § 3142(g) factors point towards the conclusion that Wagoner is a danger to the community. The nature and circumstances of the instant offense is consistent with

---

[8] The court notes that Wagoner has several contempt of court and/or failure to appear convictions in general district courts during the 2017-18 time period. He also has some violent offenses on his criminal record; however, these convictions are between 15–25 years old.

Wagoner's history of illegal possession of firearms and noncompliance with law enforcement officers. Wagoner has multiple felony convictions, some connection to contraband drugs, and the case against him appears strong. Based on the evidence, the court agrees with the magistrate judge, finds that the government has satisfied its burden, and orders Wagoner's detention pending trial.

### III.  CONCLUSION

For the reasons stated above, the court will deny defendant's motion for review (Dkt. No. 181) and order Wagoner detained pending trial. The court will issue an appropriate order.

Entered: February 11, 2022.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge