CLERK'S OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED

APR 14 2022

JULIA C. DUDLEY, CLERK
BY:  s/ H. MCDONALD
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Criminal Action No. 4:20-cr-00018 |
| v. | ) | |
| | ) | By:  Elizabeth K. Dillon |
| ALAN JAX WAGONER | ) | United States District Judge |

**MEMORANDUM OPINION AND ORDER**

Pending before the court is defendant Alan Jax Wagoner's motion to dismiss indictment for prosecutorial misconduct.  (Mot., Dkt. No. 130.)  Because the court finds that Wagoner has not been prejudiced by any prosecutorial misconduct, the court will deny the motion.

## I.  BACKGROUND

Much of the procedural and factual background in this case is contained in the court's opinion and order, entered today, denying Wagoner's motion to suppress tangible evidence seized from his truck.  The court will not repeat that here.

Relevant to this motion, on June 30, 2021, a day before a scheduled suppression hearing, the government emailed Wagoner's counsel the following *Giglio* disclosure regarding Deputy Griffith with the Henry County Sheriff's Office: "We learned today that [Griffith]…recently was diagnosed with PTSD and related symptoms…. [H]e was reassigned from an investigator to a patrol officer due to recurring memory issues he was experiencing."  (Def. Reply re *Touhy*, Dkt. No. 125 at 1.)  After learning this information, Wagoner moved to continue the suppression hearing, and the motion was granted.  Thereafter, the government reviewed Griffith's personnel file, which showed that Griffith had been reassigned and demoted due to inadequate job performance.  The government provided the relevant documents to Wagoner's counsel on July 8, 2021.  On August 23, 2021, the government filed a motion in limine regarding the disclosed

information (MIL, Dkt. 97, 100), to which motion Wagoner filed no written response.  The

motion was granted by oral order at the suppression hearing.  (Dkt. 107.)

On cross-examination at the suppression hearing on August 23, 2021, defense counsel

attacked Griffith's truthfulness.  Defense counsel inquired about the conversation Griffith had

with the government prior to the originally scheduled suppression hearing:

> Q: You didn't mention to the prosecutors you were demoted, correct?
> A: I did.
> …
> Q: You didn't just tell the prosecutors that you were reassigned?
> A: I told them I was demoted and transferred back to patrol.
> …
> Q: You conveyed information to the government about your reassignment, correct?
> A: I did.
> Q: And your claim is you also said you were demoted?
> A: Yes.
> …
> Q: Is it possible you're having memory issues about what conversation you had with the government?
> A: No.
> Q: You remember that clearly?
> A: I remember telling them that I was demoted and reassigned, that I had some memory issues with some job performance.

(Mot. to Suppress Hearing Transcript 96, 97, 99–101, Dkt. No. 108.)

As a result of this line of questioning, defense counsel attempted to call an Assistant

United States Attorney (AUSA) to testify.  (*Id.* at 116.)  Because it had no notice, the

government objected on grounds pursuant to *Touhy v. Ragen*, 340 U.S. 462 (1951).  (*Id.*)

Defense counsel explained:

> It's [Deputy Griffith's] claim under oath, that he told AUSAs that he was demoted and reassigned.  I don't think he told the AUSAs he was demoted.  I don't think [the] AUSA [] is lying; I think Deputy Griffith is.  And that's what we're trying to get out based on the memo that the government has provided.

(*Id.* at 117.)

The court allowed defense counsel to brief whether it was proper under *Touhy* to call the AUSA.  The defense filed a motion to compel the AUSA to testify (Dkt. No. 113), and the government responded in opposition on September 20, 2021 (Dkt. No. 122).  Notably, in the government's opposition brief stated:

> Deputy Griffith informed [the AUSAs] he had been demoted for case performance issues resulting from memory loss and PTSD…. Deputy Griffith did not misrepresent or materially omit information regarding his reassignment…. [T]he email [to defense counsel] should have said "demoted" rather than "reassigned from an investigator to a patrol officer" and explained the reason for the demotion.

(Dkt. No. 122 at 7.)

Given this clarification, Wagoner abandoned his *Touhy* motion and requested leave to brief whether the government had violated *Giglio* and what sanction, if any, was appropriate.[1] However, after further consideration, defense counsel decided "the claim is more appropriately brought as one of prosecutorial misconduct."  (Dkt. No. 130 at 1 n.1.)  "The issue is not that the government withheld evidence from the defense, but that the government misled the defense." (*Id.*)  Wagoner now asks this court to "exercise its supervisory powers to protect the integrity of the court by dismissing the indictment."  Alternatively, in his reply brief, Wagoner asks the court to disqualify the United States Attorney's Office for the Western District of Virginia and appoint a different prosecutor.  (Dkt. No. 154 at 13.)

---

[1] As a threshold issue, briefing was also requested on whether *Giglio* obligations apply at suppression hearings.

## II.  DISCUSSION

### A.  Legal Standards

Under very limited circumstances, a court may reverse a conviction or dismiss an indictment for prosecutorial misconduct pursuant to its supervisory power.  *United States v. Hasting*, 461 U.S. 499, 505 (1983) ("[G]uided by considerations of justice," and in the exercise of its supervisory power, a federal court may, within limits, "formulate procedural rules not specifically required by the Constitution or the Congress.").  "The purposes underlying use of the supervisory powers are threefold: to implement a remedy for violation of recognized rights, to preserve judicial integrity by ensuring that a conviction rests on appropriate considerations validly before the jury, and finally, as a remedy designed to deter illegal conduct."  *Id.* (internal citations omitted).  The court, however, is cautioned to "narrowly tailor[]" sanctions when it invokes its supervisory power to deter objectional prosecutorial conduct.  *Id*. at 506.  In other words, a court must use "the least severe sanction which will adequately punish the government and secure future compliance."  *United States v. Hastings*, 126 F.3d 310, 317 (4th Cir. 1997).

Further, a district court "may not invoke [its] supervisory power to circumvent the harmless-error inquiry prescribed by Federal Rule of Criminal Procedure 52(a)."  *Bank of Nova Scotia v. United States*, 487 U.S. 250, 254 (1988).  Similarly, this court "has no authority to dismiss the indictment on the basis of prosecutorial misconduct absent a finding that [the defendant was] prejudiced by such misconduct."  *Id.* at 263; *United States v. Derrick*, 163 F.3d 799, 807 (4th Cir. 1998) (confirming *Nova Scotia* applies at the pretrial and trial stages of a prosecution).

**B. Analysis**

### 1. The court does not find misconduct but will assume misconduct occurred for purposes of the pending motion.

Wagoner argues the government engaged in prosecutorial misconduct by "misle[ading] defense counsel." He argues that he was prejudiced by the misconduct when his motion to suppress was denied.[2] (Dkt. No. 130 at 1.) Wagoner argues that he was misled in preparation for the suppression hearing because of the discrepancy in the *Giglio* disclosures the prosecution made before and after the hearing. Prior to the hearing, the prosecution disclosed to defense counsel that Griffith told the government that he had been "reassigned" from investigator to patrol. Based on this disclosure's discrepancy with personnel files that showed Griffith had been "reassigned and demoted," Wagoner inferred that the deputy had lied to the government, i.e., that Griffith withheld the fact he had been demoted in his conversation with the government. At the suppression hearing, defense counsel questioned Griffith about this in an attempt to discredit him for untruthfulness. Only about one month after the hearing did the government clarify that Griffith had told the government he had been "reassigned and demoted," consistent with the information in the deputy's personnel file.

The government concedes that "in retrospect, its [initial *Giglio*] disclosure should have been more robust regarding Deputy Griffith's change in duties. And although a reassignment to patrol is fairly obviously a demotion, the email should have said 'demoted' rather than 'reassigned from an investigator to a patrol officer' and explained the stated reason for the demotion." (Dkt. No. 122 at 7.) Still, the government contends that there was no prosecutorial

---

[2] That denial, however, had not yet occurred when this motion was filed as the court had continued the hearing to allow for additional briefing and to determine whether additional testimony would be heard.

misconduct.  (Dkt. No. 137 at 1.)  Further, the government argues that the defendant has not been prejudiced.  (*Id.*)

The government is correct that its initial disclosure should have been "more robust."  In the court's view, the government's disclosure was not mendacious; it was simply incomplete. Griffith told the government he had been reassigned—the disclosure was true; however, he also told the government he had been demoted—hence, the disclosure was incomplete.  The government dedicates most of its opposition brief to the fact that the government provided defense counsel with the personnel files that disclosed the demotion, but that misses the point: defense counsel protests the fact that the government failed to clarify that Griffith had disclosed the demotion to the government himself.  That failure caused defense counsel to go down a rabbit hole at the suppression hearing, questioning Deputy Griffith's truthfulness assuming he had lied to the government when, in fact, he had not.  It also led to briefing on the *Touhy* issue wherein the government disclosed that Griffith had been truthful with the AUSAs regarding his demotion.

Wagoner is not contending that the incomplete disclosure followed by the documents constituted misconduct.  Rather, he asserts that the misconduct occurred when the government knew at the suppression hearing that he was laboring under an inaccurate inference and chose not to correct it at the hearing and for almost one month after the hearing.  Certainly, the lack of communication between the parties is unfortunate.  The court, however, considers whether it amounts to misconduct, and the parties briefing and argument about whether there is a government duty to correct such a misunderstanding and whether a breach of any duty constitutes misconduct is lacking.  For purposes of this motion, the court will assume prosecutorial misconduct without making such a finding.

### 2.  Wagoner suffered no prejudice.

Assuming prosecutorial misconduct, dismissal of an indictment is an extraordinary sanction.  Even viewing the government's conduct in the most negative light—lying by omission and intentional cover-up of the same—dismissal of the indictment would not be appropriate. The Supreme Court has declined to allow this remedy even where misconduct was deemed "egregious."  *See United States v. Morrison*, 449 U.S. 361, 365–67 (1981).  The government's conduct in this case does not rise to that level, and, again, misconduct alone does not give the defendant the remedy of dismissal—he must show that he was prejudiced.  Wagoner cannot do so.

Wagoner fails to explain how the outcome of the motion to suppress would have been different had the government told him the Griffith was forthcoming and had disclosed to them that he was reassigned and demoted.  At the hearing, he said that he still would have filed the motion, but he does not articulate, or even suppose, what he would have done at the hearing or in the month that followed that would have allowed him to prevail on the suppression motion.  The only difficulty Wagoner might have suffered was inconvenience and delay in the questioning of Griffith and in the *Touhy* briefing.  At this point, the confusion has clearly been settled with plenty of clearance from trial.  Inconvenience and delay are clearly insufficient to warrant dismissal of the indictment.  *See United States v. Hastings*, 126 F.3d 310, 317 (4th Cir. 1997) (finding dismissal was "an extreme and inappropriate sanction" when prejudice was "inconvenience and slight expense of delays").

### 3.  Disqualification of the United States Attorney's Office is not warranted.

In the alternative, Wagoner argues that the court should disqualify the United States Attorney's Office for the Western District of Virginia.  Normally, this court would not consider

requests for new relief raised for the first time in a reply brief.  However, the government raised the issue of a potential conflict of interest in its opposition brief.  The government notified the court that it believes defense counsel implied that the government "could avoid an allegation of prosecutorial misconduct by offering a plea agreement on terms favorable to the defendant." (Dkt. No. 137 at 8.)  Thus, the government refrained from negotiations because of a possible conflict.   Defense counsel countered stating that he was not linking plea negotiations to ethical complaints.  (Gov't. Ex. A 1, Dkt. No. 137-1.)

Wagoner cites to two cases where prosecutors were disqualified because of conflicts of interest.  In *Young v. United States ex rel. Vuitton et Fils S.A.*, 481 U.S. 787 (1987), a special private prosecutor was appointed in a contempt proceeding regarding failure to abide by a settlement agreement.  The special prosecutor, however, also represented the beneficiary of the settlement agreement.  *Id.* at 791.  On appeal, the Supreme Court overturned the decision because the defendant's right to a disinterested prosecutor was violated and was not harmless. *See id.* at 807–09.  In *United States v. Dyess*, 231 F. Supp. 2d 493 (S.D.W.V. 2002), an entire U.S. Attorney's Office was disqualified in a case involving possible sharing of drug proceeds by an investigator with the spouse of one of the defendants.  The possibility of one United States Attorney having to testify in that case required the recusal of the entire office because of the potential for the appearance of impropriety.

These cases, however, are not similar to this one.  Here, the potential conflict arises from this pending motion to dismiss for prosecutorial misconduct, and there is no indication that anyone from the United States Attorney's Office will be called as a witness.  Once the court rules on this pending motion, it may be that any potential conflict resolves.  Even if the potential conflict does not resolve, there is no reason to disqualify the entire office merely because the

then Acting United States Attorney (who is no longer with the office) decided whether an AUSA

could testify under *Touhy* – especially when that issue was resolved without testimony.

Disqualifying the entire U.S. Attorney's Office for the Western District of Virginia is a "drastic

remedy," *United States v. Farrell*, 115 F. Supp. 3d 746, 765 (S.D.W. Va. 2015), and one that is

not appropriate here.  Even assuming a conflict on behalf of the AUSAs in this case, "the fact

that one member of the Office may have a disqualifying interest in the case does not preclude the

entire Office from handling the case."  *United States v. Hubbard*, 493 F. Supp. 206, 208 (D.D.C.

1979); *see also*, *Farrell*, 115 F. Supp. 3d at 764 n.23 (collecting cases).

## III.  CONCLUSION

Because Wagoner cannot show prosecutorial misconduct that prejudiced him, this court

will not dismiss the indictment and, alternatively, will not disqualify the United States Attorney's

Office for the Western District of Virginia.  Therefore, it is ORDERED that Wagoner's motion

to dismiss the indictment for prosecutorial misconduct (Dkt. No. 130) is DENIED.

Entered: April 14, 2022.

*/s/ Elizabeth K. Dillon*
    Elizabeth K. Dillon
    United States District Judge