CLERKS OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED
APR 19 2022
JULIA C. DUDLEY, CLERK
BY: s/ H. MCDONALD
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Criminal Action No. 4:20-cr-00018 |
| v.                        ) | |
| ) | By:  Elizabeth K. Dillon |
| ALAN JAX WAGONER          ) | United States District Judge |

**MEMORANDUM OPINION AND ORDER**

Pending before the court is defendant Alan Jax Wagoner's motion to dismiss counts one and two of the three-count second superseding indictment.[1] (Dkt. No. 155.) Wagoner argues these counts are based on unconstitutionally vague statutes. Specifically, Wagoner asserts a facial challenge to the phrase "readily restored" in 26 U.S.C. § 5845(d) and the phrase "may be readily converted" in 18 U.S.C. § 921(a)(3)(A). The matter has been fully briefed and argued. For the reasons stated below, the court will deny the motion without prejudice.

I.  BACKGROUND

**A.  Factual Background**[2]

On January 26, 2020, officers of the Henry County Sheriff's Office found ten firearms in Wagoner's pickup truck. All the firearms show some damage to varying degrees.[3] Because Wagoner had previously been convicted of a felony, he was prohibited from possessing firearms and ammunition. One of the weapons was deemed by the government to be an unregistered

---

[1] The court granted Wagoner leave to file a supplemental motion providing further briefing on the matter (Dkt. No. 155), and that supplemental motion incorporated the original motion (Dkt. No. 135), rendering the original motion moot.

[2] A more detailed summary of the facts in this case can be found in the court's opinion denying Wagoner's motion to suppress. (Dkt. No. 187.)

[3] All the firearms appear to be damaged, melted, rusted, or disassembled to varying degrees. The night before Wagoner was arrested, there was a fire at his residence. Some of the firearms showed damage consistent with exposure to heat. (*See* Photographs, Dkt. No. 155, Ex. 2.)

1

weapon made from a Remington, Model 11 Sportsman, 16 gauge shotgun with a barrel of less than 18 inches and overall length of less than 26 inches. As a result, Wagoner faces a three-count indictment. (Second Superseding Indictment, Dkt. No. 62.)

As part of the investigation, Special Agents James Barlow and Nicholas Davis of the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) examined the firearms and produced reports. (Dkt. Nos. 60-1, 61-2.)

Special Agent Davis analyzed all ten firearms in his two-page report. (Dkt. No. 61-2.) He concluded:

> Based upon the physical examination of the firearms, in conjunction with the research, knowledge, and experience of SA Davis, it is SA Davis' opinion that: [the ten firearms] are firearms as defined in Title 18, United States Code, Chapter 44, Section 921(a)(3) and were not manufactured in the Commonwealth of Virginia.

Special Agent Barlow, in his thirteen-page report relevant to count two, analyzed only the Remington, model Sportsman, 16-gauge firearm which he refers to as Exhibit 11, "Remington, model 'Sportsman,' 16-gauge firearm, serial number [] (suspected weapon made from a shotgun." (Dkt. No. 60-1 at 1.) In the findings section, Agent Barlow noted that Exhibit 11 "was originally manufactured as a shotgun," but, "[a]s received, there is no stock or forend included with the Exhibit and the interior and exterior surfaces are extensively covered with rust." (*Id*. at 2.) He also noted that the "barrel has been crudely cut at an angle and has no front sight" and that the Exhibit was missing "many internal parts" including the bolt assembly, action spring assembly and tube, and trigger spring. (*Id.* at 3.) Additionally, "the action spring assembly tube appears to have been cut off close to the rear tang." (*Id.* at 4.) Further describing Exhibit 11's condition, Barlow wrote:

> Exhibit 11 has the appearance of being subjected to intense heat. The exterior and interior of the firearm is covered in rust similar to a firearm recovered from a house fire after being subjected to high temperatures and/or firefighting water. As received, the barrel was recessed into the receiver in what could be described as the "recoil" position. I coated the sliding surfaces between the barrel and the receiver with solvent and used a hammer and punch to free the barrel from the receiver, a process that took approximately two minutes.

(*Id.*)

Barlow stated that the missing parts were "commercially available at the time [the] report was written" and that "[d]ue to the condition of the firearm, test firing…was not performed." (*Id.*) He noted that "this model firearm has working parts that are located in the stock" and "cutting the action spring tube and action spring would prevent the firearm from firing semiautomatically…." (*Id.* at 4.) Additionally, Barlow concluded that because of the lack of a stock, the firearm "is not designed to be fired from the shoulder and does not meet the definition of a 'shotgun,'" rather it is "a weapon made from a shotgun…." (*Id.* at 3.)

In conclusion, Agent Barlow found the following:

> **Exhibit 11** is a weapon designed to expel a projectile by the action of an explosive and incorporates the receiver of such a weapon; therefore, it is a "**firearm**" as defined in 18 U.S.C. § 921(a)(3)(A) & (B) [Gun Control Act].
>
> **Exhibit 11** is a weapon made from a shotgun that, as modified, has an overall length of less than 26 inches and a barrel less than 18 inches in length; therefore, it is a **firearm** as defined in 26 U.S.C. § 5845(a)(2) [National Firearms Act].

(*Id.*)

**B. Relevant Statutory Authority**

Count One of the second superseding indictment charges Wagoner with being a felon in possession of firearms "in violation of Title 18, United States Code, § 922(g)(1)." (*Id.* at 1.) Count Two charges Wagoner with receiving and possessing an unregistered "weapon made from

3

a Remington, model 11 Sportsman, 16 gauge shotgun with an overall length of less than 26 inches and a barrel of less than 18 inches in length … in violation of Title 26, United States Code, §§ 5841, 5861(d) and 5871." (*Id.* at 2.)

Relevant to count one, 18 U.S.C. § 921(a)(3), in pertinent part, defines "firearm" as follows:

> The term "firearm" means (A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; [or] (B) the frame or receiver of any such weapon….

Wagoner asserts that, because the firearms found in his possession were damaged, they can only satisfy the statutory definition for a firearm if they "may readily be converted to expel a projectile." He then argues that the phrase "may readily be converted" is unconstitutionally vague on its face.

Relevant to count two, 26 U.S.C. § 5845 provides the following definitions in relevant part:

> The term "firearm" means (1) a shotgun having a barrel or barrels of less than 18 inches in length; (2) a weapon made from a shotgun if such weapon as modified has an overall length of less than 26 inches or a barrel or barrels of less than 18 inches in length….

26 U.S.C. § 5845(a).

> The term "shotgun" means a weapon designed or redesigned, made or remade, and intended to be fired from the shoulder and designed or redesigned and made or remade to use the energy of the explosive in a fixed shotgun shell to fire through a smooth bore either a number of projectiles (ball shot) or a single projectile for each pull of the trigger, and shall include any such weapon which may be readily restored to fire a fixed shotgun shell.

26 U.S.C. § 5845(d).

Wagoner proposes that the definition of a firearm in section 5845(a)(2) necessarily incorporates the definition of a shotgun in § 5845(d). Like count one, Wagoner asserts that, because the unregistered firearm found in his possession was damaged, it can only be a firearm as defined by the statute if it "may be readily restored to fire a fixed shotgun shell." Wagoner argues that the phrase "may be readily restored" is unconstitutionally vague on its face.

The government contends that it will offer evidence at trial showing that neither of the contested phrases are at issue in this case because the damaged firearms found in Wagoner's possession satisfy other portions of the relevant statutes. Regarding count one, the government asserts that the damaged firearms meet the statutory definition of a firearm in section 921(a)(3)(A) and (B) because the damaged firearms are "designed to…expel a projectile," and, alternatively, at least one of the damaged firearms contains "the frame or receiver" of any such weapon. Regarding count two, the government asserts that the damaged unregistered firearm satisfies section 5845(a) without reference to section 5845(d).

## II.  DISCUSSION

### A.  Legal Authority

A basic requirement of due process is that "laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). Without providing this opportunity, or put another way, providing an "ascertainable standard" for compliance, a statute can be deemed unconstitutionally vague.

A defendant can challenge a statute as vague in two ways. A defendant can challenge the statute "as-applied," that is, as the statute applies to the conduct in his particular case. Alternatively, a defendant can challenge the statute on its face. In a facial challenge, a defendant

5

asserts that a statute "is unconstitutional in all of its applications." *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 449 (2008) (citing *United States v. Salerno*, 481 U.S. 739, 745 (1987)). However, in a pair of recent cases, the Supreme Court has deemed statutory provisions facially vague even though there was conduct that clearly fell within those provisions' grasp. *Sessions v. Dimaya*, --- U.S. ----, 138 S. Ct. 1204, 1223 (2018); *Johnson v. United States*, 576 U.S. 591, 602 (2015). Additionally, there is a longstanding principle that a person "who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others." *United States v. Moriello*, 980 F.3d 924, 931 (4th Cir. 2020).

In the time since the briefing and argument in this matter, the Fourth Circuit has issued its opinion in *United States v. Hasson*, 26 F.4th 610 (4th Cir. 2022), examining the vagueness doctrine in the wake of *Johnson* and *Dimaya*. In *Hasson*, the defendant brought a facial challenge to 18 U.S.C. § 922(g)(3), which prohibits someone who is "an unlawful user of or addicted to any controlled substance" from possessing firearms. *Id.* at 612. While the defendant conceded that his own conduct fell "squarely within the confines of" the relevant statute, he nonetheless argued the statute was facially vague relying on *Johnson* and *Dimaya*. *Id.* at 616–17. Specifically, the defendant argued that those cases, and their holdings that a statute need not be unconstitutional in all its applications to be facially vague, undermined the principle that "if a law clearly prohibits a defendant's conduct, the defendant cannot challenge, and a court cannot examine, whether the law may be vague for other hypothetical defendants." *Id.* (quoting *United States v. Hosford*, 843 F.3d 161, 170 (4th Cir. 2016)).

The Fourth Circuit disagreed. The court reasoned that "the vagueness doctrine requires that a criminal statute 'provide a person of ordinary intelligence fair notice of what is prohibited'

6

and not be 'so standardless that it authorizes or encourages seriously discriminatory enforcement,'" and found that those rationales are not implicated when a statute clearly proscribes a defendant's conduct. *Id.* at 619 (quoting *United States v. Williams*, 553 U.S. 285, 304 (2008)). The court also noted that allowing defendants who fail to make an as-applied showing to nonetheless challenge a statute facially threatens the limited nature of the judicial power, which is circumscribed to cases and controversies properly brought before the court. *Id.* The court explained that "*Johnson and Dimaya*'s rejection of the vague-in-all-its-applications standard does not undermine the rule prohibiting defendants whose conduct a statute clearly proscribes from bringing vagueness challenges."[4] *Id.* at 619. In other words, when a criminal defendant brings a facial challenge, he must show that the statute is vague as applied to his conduct.

## B. Wagoner's Motion to Dismiss for Vagueness[5]

Unlike the defendant in *Hasson*, Wagoner does not concede that the statute clearly applies to his conduct. Rather, Wagoner argues, in no uncertain terms, that the challenged

---

[4] *Johnson* and *Dimaya* concerned residual clauses in statutory provisions that are analyzed using the categorical approach. *See United States v. Hasson*, 26 F.4th 610, 617–18 (4th Cir. 2022) (reviewing *Johnson* and *Dimaya*). In short, the categorical approach requires tying "the judicial assessment of risk to a judicially imagined 'ordinary case' of a crime, not to real-world facts or statutory elements." *Johnson v. United States*, 576 U.S. 591, 597 (2015). Because of the "indeterminacy of the wide-ranging inquiry required by the residual clause," the *Johnson* Court found it denied fair notice to defendants and invited arbitrary enforcement. In *Hasson*, the panel noted that "[e]ven if we were to view *Johnson* and *Dimaya* as instances in which the Court bypassed as-applied challenges to proceed directly to facial challenges, their unique context sets them apart." *United States v. Hasson*, 26 F.4th 610 (4th Cir. 2022) (internal citations omitted). "In a routine vagueness challenge, by contrast, a court is called upon to apply a statutory prohibition to a defendant's real-world conduct. That inquiry is fully compatible with a traditional as-applied vagueness analysis." *Id.* (internal citations omitted).

[5] The United States objected to Wagoner's motion to dismiss on timeliness grounds. Wagoner filed his initial motion to dismiss for vagueness on October 18, 2021, which was within 21 days of the then-scheduled trial and in violation of the pretrial scheduling order. (*See* Dkt. No. 30). However, because this court found good cause to continue the trial to May 9, 2022, the court will consider the motion.

statutory phrases "cannot constitutionally be applied to any set of facts."[6] (Suppl. Mot. to Dismiss for Vagueness 10, Dkt. No. 155.) In light of the Fourth Circuit's recent holding in *Hasson*, this court must first determine whether the statutes apply to Wagoner prior to examining the facial validity of the statutes.

### 1. Wagoner has not demonstrated that the phrases he challenges are the relevant provisions to his case.

As a threshold issue, it is not clear to the court that the challenged statutory phrases apply to Wagoner's conduct at all. As the government argues, there are other ways to satisfy the definition of a firearm in § 921(a)(3), which is written in the disjunctive. The same is true of § 5845. Section 921(a)(3) includes both any weapon which "is designed to" expel a projectile and "the frame or receiver of any such weapon." Similarly, § 5845(a), makes a distinction between a shotgun and a weapon made from a shotgun. If a weapon made from a shotgun had to meet the same definition of shotgun, then there would be no need to have two separate provisions. Moreover, even if the court looks to the definition of shotgun contained in § 5845(d), it states that a shotgun "means a weapon designed or redesigned, made or remade, and intended to be fired from the shoulder," in addition to the phrase Wagoner contests. Special Agent Barlow notes in his report that the weapon "was originally manufactured as a shotgun." (Dkt. No. 60-1 at 2.) Wagoner's main contention as to why his conduct falls within the phrases he challenges is that the firearms are damaged and because "none of these weapons was test-fired" to show that they could expel a projectile. (Reply 7, Dkt. No. 161.)

---

[6] When asked by the court at the hearing whether his challenge was an as-applied or facial challenge, Wagoner originally indicated that it was "both." However, particularly at this juncture, his challenge is appropriately considered to be a facial challenge to the contested phrases. (*See* Suppl. Mot. to Dismiss for Vagueness 9 n.5, Dkt. No. 155.)

Wagoner cites no support for his contention that damaged weapons must fall within the phrases he challenges. Indeed, several circuits have found that weapons that have been damaged and/or rendered inoperable are "firearms" under the "designed to" language of § 921(a)(3)(A). *See United States v. Dotson*, 712 F.3d 369 (7th Cir. 2013) (determining that a pistol qualified as a firearm under § 921(a)(3) despite "significant damage, missing/broken parts, and extensive corrosion"); *United States v. Rivera*, 415 F.3d 284 (2d Cir. 2005) (finding that an inoperable weapon remains "designed to" expel a projectile); *United States v. Ruiz*, 986 F.2d 905 (5th Cir. 1993) (finding "inoperable gun was designed to expel a projectile, and therefore was a firearm"); *United States v. Yannott*, 42 F.3d 999 (6th Cir. 1994) ("[T]he law is clear that a weapon does not need to be operable to be a firearm."); *United States v. Davis*, 668 F.3d 576 (8th Cir. 2012). As the Seventh Circuit put it, courts have found that "[a] gun is still a gun—a weapon designed to expel a projectile…even though it is in bad condition and can be restored to working condition only by a gunsmith." *Dotson*, 712 F.3d 369, 370. The Seventh Circuit reasoned that the "object," not the "design" has been altered when a gun is damaged. *Id.* A similar line of reasoning could be applied to the "designed" language in section 5845(d).[7]

In sum, it is not clear to the court that the phrases Wagoner contests are the only avenues for the government to satisfy its burden of proof that the damaged firearms are firearms under section 921(a)(3) and section 5845. The "designed to" language of section 921(a)(3) has been

---

[7] To be clear, the second superseding indictment charges Wagoner with possessing an unregistered "weapon made from a shotgun," not an unregistered "shotgun." The government does not concede that section 5845(d)'s definition of shotgun is necessarily incorporated into section 5845(a)(2). (Opp'n. to Mot. to Dismiss for Vagueness 15, Dkt. No. 160.) At this point, the court need not address this issue.

9

interpreted by many courts to encompass damaged or inoperable weapons, [8] and the "frame or receiver" subsection by its very nature seems to contemplate disassembled or "mangled" firearms. For this court to nonetheless rule on the facial validity of the contested phrases—that may not even be applicable to Wagoner's conduct—would be to overstep the bounds of its judicial power. *See Hasson*, 26 F.4th at 619. The court declines to do so.

### 2. Even if the challenged provisions do apply, Wagoner must show that the statutes are vague as applied to his conduct.

Even assuming Wagoner is correct that the phrases he challenges exclusively apply to his conduct, *Hasson* makes clear that it must be determined that the phrases are vague as applied to his conduct. The government argues that such a finding would be premature because it has not adduced evidence on the question. The court agrees that such a determination would be premature at this juncture.

The government intimates that it plans to call expert witnesses to testify about the nature of the damage to the weapons and additionally "how damaged a firearm must be for it no longer to fall" within the grasp of section 921(a)(3)(B). Importantly, the government also intends to

---

[8] Regarding the "designed to" language and damaged firearms, the Eighth Circuit has noted that "[a] different question might arise if a gun was damaged in a way that fundamentally altered its original design, '[f]or example, a gun with a barrel filled with lead, maybe for use as a theatrical prop.'" *United States v. Davis*, 668 F.3d 576 (8th Cir. 2012) (citations omitted). However, the court noted "[t]hat would be a question of fact." *Id.* In a similar vein, the Seventh Circuit in *Dotson* noted there might be a point where a firearm is so damaged that it can no longer be considered to be designed as a firearm:

> The gun in this case, although in bad condition, neither was redesigned to be something other than a gun nor is so badly damaged that it can no longer be regarded as a weapon designed to fire bullets. And just as a very ill person can look entirely normal on the outside, the outward appearance of the defendant's gun is normal. Designed to be a gun, never redesigned to be something else, not so dilapidated as to be beyond repair, the gun fits the statutory definition.

*United States v. Dotson*, 712 F.3d 369, 372 (7th Cir. 2013).

10

introduce evidence that Wagoner himself is a "gunsmith," which would clearly factor into an analysis as to whether the statutory phrases he contests apply to his conduct.

As the government notes in its briefing, the collection of cases to which Wagoner cites to in support of his argument that the phrases provide no ascertainable standard were all decided after trial or after summary judgment in forfeiture cases. *See, e.g., United States v. Smith*, 477 F.2d 399 (8th Cir. 1973); *United States v. One TRW, Model M14, 7.62 caliber rifle*, 441 F.3d 416 (6th Cir. 2006) (forfeiture case). In light of *Hasson*, it is clear that this court must wait to hear evidence to determine whether Wagoner's conduct is "clearly prohibited" by the statutory phrases before it can rule on any challenge to the facial validity of such phrases.

\*\*\*

Wagoner's motion is premature and relies on assumptions that cannot be credited until evidence is admitted at trial. Maybe the fire damage is so extensive that the guns can no longer be considered to be designed as weapons, or maybe the evidence will show they are unable to be "readily converted" or "readily restored"—or vice versa. Wagoner's facial challenge runs into two issues. First, it is not even clear that the challenged phrases are exclusively implicated by his conduct. Second, in *Hasson*, the Fourth Circuit made clear that a facial challenge such as Wagoner's cannot bypass an as-applied analysis. This court cannot decide, based on the pleadings, whether the challenged phrases are vague on their face. Evidence is required to first determine whether the phrases are relevant at all and whether they are vague as they apply to Wagoner.

## III.  CONCLUSION

It is hereby ORDERED that Wagoner's supplemental motion to dismiss counts one and two of the second superseding indictment for vagueness (Dkt. No. 155) is DENIED WITHOUT PREJUDICE and the original motion (Dkt. No. 135) is DISMISSED AS MOOT.

Entered: April 19, 2022.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge