CLERKS OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED

AUG 22 2022

JULIA C. DUDLEY, CLERK
BY: s/ H. MCDONALD
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Criminal Action No. 4:20-cr-00018 |
| v. | ) | |
| | ) | By:  Elizabeth K. Dillon |
| ALAN JAX WAGONER | ) | United States District Judge |

## MEMORANDUM OPINION AND ORDER

The trial in this case is scheduled to begin on September 6, 2022.  Pending before the court

are the following motions: (1) defendant's motion for impeachment evidence pursuant to *Giglio v.*

*United States*, 405 U.S. 150 (1972) (Dkt. No. 26); (2) the government's second motion in limine to

admit evidence that defendant attempted to flee during the traffic stop on January 26, 2020, and to

preclude defendant from arguing that law enforcement used excessive force against him (Dkt. No.

67); (3) the government's third motion in limine to preclude defendant from introducing body

camera evidence of his October 2, 2018, encounter with the Henry County Sheriff's Office; (4)

defendant's motion for leave of court to file a motion to enforce the court's joint discovery and

inspection order with respect to the government's obligations under the Jencks Act (Dkt. No. 174);

and (5) defendant's motion to exclude testimony from the government's proffered expert witness

(Dkt. No. 189).  The government has also filed three notices of intent to use Rule 404(b) evidence

(Dkt. Nos. 65, 129, and 194), to which Wagoner filed no written objections or motions in limine.

Following briefing and argument and for the reasons stated below, defendant's *Giglio* motion will

be dismissed as moot, the government's second motion in limine will be granted, the government's

third motion in limine will be denied without prejudice, defendant's motion for leave to file a

motion to enforce the government's Jencks Act violations will be granted in part and denied in part,

and defendant's motion to exclude expert testimony will be denied.  Of course, with regard to

motions in limine, the court may revisit these rulings at trial, depending on the evidence elicited and the context in which the evidence is offered.

## I. Defendant's *Giglio* Motion

Alan Jax Wagoner, defendant, moved for discovery of impeachment evidence pursuant to *Giglio v. United States*. (Dkt. No. 26.)  In that motion, he details individual topics of possible impeachment evidence.  At the hearing on this motion, all parties noted that the government's obligation to provide *Giglio* material is an ongoing one.  The government represented to the court that, at this point, it believes it has provided all such material to the defense.  Wagoner did not identify any outstanding materials he believes he is entitled to receive.  Because this ongoing obligation is already included in the parties' joint discovery and inspection order (Dkt. No. 20 at 3), no new order is required to memorialize the government's ongoing obligation to turn over *Giglio* material.  Therefore, defendant's motion for impeachment evidence pursuant to *Giglio* will be dismissed as moot.

## II. Government's Second and Third Motions in Limine[1]

In the government's second motion in limine, the government seeks to: (1) admit evidence that defendant attempted to flee during the traffic stop on January 26, 2020; and (2) preclude defendant from arguing that law enforcement used excessive force against him or, in the alternative, permit the government to introduce evidence of defendant's prior encounters with law enforcement if defendant opens the door.  (Dkt. No. 67 at 1.)

The government argues that evidence of defendant's attempt to flee when pulled over by Lt. Hambrick on January 26, 2020, is part of the story of the crimes on trial, is not admitted solely to demonstrate bad character and, as such, is not subject to Rule 404(b)'s limitations.  "Rule 404(b)

---

[1] The government' first motion in limine was granted by agreement of counsel.  (Dkt. Nos. 66, 72.)

does not bar evidence that completes the story of the crime or explains the relationship of parties or the circumstances surrounding a particular event." *United States v. Basham*, 561 F.3d 302, 327 (4th Cir. 2009). The government also claims that defendant's fleeing is evidence of a guilty conscience and tends to make his unlawful possession of firearms and ammunition more probable than it would be without the evidence. Where "testimony is admitted as to acts intrinsic to the crime charged, and is not admitted solely to demonstrate bad character, it is admissible." *United States v. Chin*, 83 F.3d 83, 88 (4th Cir. 1996). "Other criminal acts are intrinsic when they are 'inextricably intertwined or both acts are part of a single criminal episode or the other acts were necessary preliminaries to the crime charged.'" *Id.* (quoting *United States v. Lambert*, 995 F.2d 1006, 1007 (10th Cir. 1993)); *see also United States v. Kennedy*, 32 F.3d 876, 885 (4th Cir. 1994) (holding that Rule 404(b) is not applicable to evidence of crimes that arose out of the same series of transactions as the charged offense or that are necessary to complete the story of the charged crime). Defendant's flight from his car is part of the single criminal episode for which he was charged, and it completes the story of the criminal episode. Therefore, the government's motion will be granted. At the hearing, Wagoner agreed that the evidence of flight should be admissible.

The government also argues that the court should preclude Wagoner from arguing that police used excessive force against him because such an argument is "improper and irrelevant." (Dkt. No. 67 at 4.) At the hearing, Wagoner argued that the conduct that occurred during his arrest, as well as the evidence of defendant's prior encounters with the Henry County Sheriff's Office—the subject of the government's third motion in limine—are relevant to his defense that

the sheriff's office was biased against defendant.[2]  The court agrees with the government that whether the officers used excessive force in apprehending Wagoner is irrelevant to the issues in this case.  Moreover, defendant has not argued that he was pulled over on January 26, 2020, for no lawful purpose or because he was targeted.  For these reasons, the court will grant the government's second motion in limine.

In the government's third motion in limine, the government moves to preclude defendant from introducing body camera video footage from his October 2, 2018 encounter with the Henry County Sheriff's Office.[3]  While the court's finding that excessive force is not relevant makes this motion largely moot, defendant also argues that if the government contends that defendant fled from his vehicle, that his actions are inconsistent with innocence, or the police were justified in using force against him, the government opens the door for defendant to introduce footage of his prior encounters with Henry County officers—specifically, the footage showing a Henry County Sheriff officer present on Wagoner's property, pushing Wagoner's friend, and yelling at and threatening Wagoner.  To the extent that the government links Wagoner's flight to a consciousness of guilt, this evidence may well be relevant to counter that inference.  Because a ruling on this issue depends upon the evidence offered at trial, the court will deny the government's third motion in limine without prejudice.  The government may renew this objection at trial.

---

[2] Defendant did not file a response to the government's second motion in limine.  Furthermore, this argument was not included in defendant's response to the government's third motion in limine.  (Dkt. No. 132.)  (The court will, however, consider arguments regarding admissibility on the basis of bias at trial.)  Instead, defendant argued that if the government argues consciousness of guilt or that the officers were justified in using force, then evidence of his 2018 encounter with other officers is admissible.

[3] These incidents were covered in detail in the court's opinion denying defendant's motion for bond review. (Dkt. No. 183.)

4

### III.  Defendant's Jencks Act Motion

Wagoner moves for leave of court to file a motion to enforce the court's joint discovery and inspection order with respect to the government's obligations under the Jencks Act.  (Dkt. No. 174.)[4]  The Jencks Act was enacted in response to the Supreme Court's decision in *Jencks v. United States*, 353 U.S. 657 (1957), which held that criminal defendants are entitled to obtain, for impeachment purposes, statements made by government witnesses to government agents that relate to the subject matter of the witnesses' direct testimony.  The Act is designed to be "only a limited intrusion into government files" for impeachment purposes and "to shift" the duty regarding document production to the court from the government.  *United States v. Roseboro*, 87 F.3d 642, 645 (4th Cir. 1996) (citing *Palermo v. United States*, 360 U.S. 343, 349-50 (1959)).  Wagoner asks that the court require the government to produce potential Jencks Act material to the court for in camera review.  He believes that any notes the government took when interviewing Deputy Griffith and Lt. Hambrick, who testified at the suppression hearing, may be Jencks material.

Generally, "[n]otes taken by *prosecutors* and other government agents during a pretrial interview of a witness may qualify as a statement of the witness under [18 U.S.C.] § 3500(e)(1) *if* the witness has reviewed them in their entirety—either by reading them himself or by having them read back to him—and formally and unambiguously approved them—either orally or in writing—as an accurate record of what he said during the interview."  *United States v. Smith*, 31 F.3d 1294, 1301 (4th Cir. 1994) (emphasis added).  Pursuant to the Act, the court may conduct an in camera inspection of the documents.

---

[4]  The court denied defendant's previous motion to produce Jencks material as untimely filed and because it was filed without leave of court.  (Dkt. No. 172.)  The court will allow the filing of the motion and construe it as a motion to enforce the court's joint discovery and inspection order with respect to the government's obligations under the Jencks Act.

The Fourth Circuit has clarified, however, that "there is no per se requirement that a district court conduct an in camera review of government documents to determine whether they contain a Jencks Act statement." *United States v. Roseboro*, 87 F.3d 642, 646 (4th Cir. 1996). There must be a sufficient foundation to invoke the court's duty under the Act. "To invoke the court's duty under the Act, a defendant must, after the direct testimony of a government witness, first make a sufficiently specific request and provide some indication that the witness gave a pretrial statement to a government agent generally related to the witness' direct testimony." *Id.* at 645. The defendant's showing "need not be great, but it must be more than a mere automatic demand for defendant's witness' statements." *Id.* at 645–46.

In *Roseboro*, the Fourth Circuit found no error when the district court did not review the requested documents because the defendant did not establish an adequate foundation. *Id*. at 646. The defendant had only established that an FBI agent took contemporaneous notes when interviewing the witness, asked questions, and repeated the answers back to the witness to make sure he had the answers right. *Id*. There was no evidence that the agent read the notes back to the witness or that the witness adopted the notes. The court also noted that there was no indication that the agent was making a verbatim record. *Id*.

Here, Wagoner has made even less of a showing than in *Roseboro* and has not established an adequate foundation for the court to conduct an in camera review of notes made by the government attorneys. Regarding Deputy Griffith, the government does not dispute that it took notes while interviewing Deputy Griffith about his demotion, about which he testified at the suppression hearing. He told the prosecutor that he had been demoted and transferred back to patrol. The government admitted that he used the word "demoted" and explained his reason for the demotion.[5]

---

[5] As the court stated in *Roseboro*, "interview notes that 'merely select [] portion, albeit accurately, from a lengthy oral recital' do not satisfy the Jencks Act's requirement of a 'substantially verbatim recital.'" 87 F.3d at 645 (quoting Palermo, 360 U.S. at 352).

Despite having cross-examined Griffith and calling him for direct examination, Wagoner did not establish that the prosecutors read anything back to Griffith, had Griffith adopt anything, or that the government was making a verbatim record when interviewing Griffith.  While Griffith was asked about an email between counsel, he could not identify it and was not a party to the email.  Regarding Lt. Hambrick, there is no showing of the existence of prosecutor's notes, and the only documents requested at the suppression hearing were any documents regarding Hambrick's patrol vehicle camera which had not been working for a year or so before the stop of Wagoner.  Notably, the lawfulness of the stop was not contested.

Because Wagoner has not established an adequate foundation, the court will not order that the notes be provided to the court for an in camera review.  The court will, however, require the government to retain any prosecution notes of conversations with Griffith and Hambrick while this case is pending before this court, including any appeal.

## IV.  Defendant's Motion to Exclude Expert Testimony

Wagoner moves to exclude testimony from the government's proffered expert witness.  Specifically, he moves to preclude the government's expert witness from testifying about "any test he performed on the alleged firearms after November 4, 2021."  (Dkt. No. 189.)

On March 31, 2022, thirty-nine days before the then scheduled trial, the government provided an amended notice of its intent to introduce expert testimony.  Briefly, the amended notice provides additional reports from an expert previously identified on June 11, 2021.  The additional reports include the expert test firing several of the ten firearms allegedly found in Wagoner's possession.  Wagoner argues that the government's disclosure of its amended notice is untimely according to this court's order continuing the trial on November 4, 2021.  (Dkt. No. 159.)  Additionally, he argues that the government's amended notice pursues "an entirely new theory of prosecution," and, therefore, this court should disallow the expert testimony.  The court finds that

the government's notice is timely.  The court's order continuing the trial provided that "no further pretrial motions may be filed in this case without leave of court."  (Dkt. No. 159.)  The government's amended expert notice is not a motion, and it was disclosed a few weeks prior to the 14-day deadline contemplated by the joint discovery and inspection order.  (Dkt. No. 20.)  Moreover, the government is merely responding to the most recent theory, articulated in Wagoner's motion to dismiss on the basis of unconstitutional vagueness of the statute in light of the damage to the firearms.  Therefore, the court will deny defendant's motion to exclude expert testimony.

## V.  Government's Rule 404(b) Notices

The government has filed notices of its intent to use Rule 404(b) evidence.  (Dkt. Nos. 65 (2019 conviction for possessing sawed-off rifle and 2019 investigation regarding silencer from China), 129 (Polzella testimony about he and Wagoner building of firearm), and 194 (Wagoner's possession of firearm silencer)).  In some of these notices, the government states its position that the evidence is admissible regardless of Rule 404(b), but it provides the notice in an abundance of caution.  Wagoner filed no objections or motions in limine in response to these notices.  In its last notice, the government provides notice that its expert, James Barlow, will testify that (at least) two silencers were found in the bed of the truck.  At the hearing, Wagoner objected for lack of foundation and also noted that his time to file any objection to the notice had not passed.  However, no further objection was filed. Wagoner also noted that he did not think the government could establish a proper foundation by which to admit any of its Rule 404(b) evidence.  Of course, in this case, as in every case, a party is expected to lay a proper foundation to introduce evidence.

While no ruling is required on these notices, the court reminds counsel, as it did at the hearing, that the pretrial order (Dkt. No. 30) states that counsel should anticipate any evidentiary issues or disputes and bring them to the attention of the court prior to trial.

**VI.  Conclusion and Order**

Based on the foregoing, it is HEREBY ORDERED that:

1.      Defendant's motion impeachment evidence pursuant to *Giglio* (Dkt. No. 26) is DISMISSED AS MOOT;

2.      The government's second motion in limine (Dkt. No. 67) is GRANTED;

3.      The government's third motion in limine (Dkt. No. 128) is DENIED WITHOUT PREJUDICE;

4.      Defendant's motion for leave of court to file a motion to enforce the court's joint discovery and inspection order with respect to the government's obligations under the Jencks Act (Dkt. No. 174) is GRANTED IN PART to the extent the court construes it as a motion to enforce the court's joint discovery and inspection order and requires the government to retain any prosecutors' notes of conversations with Griffith and Hambrick during the pendency of the case (including any appeal) and DENIED IN PART to the extent it will not require the government to produce any documents for in camera review; and

5.      Defendant's motion to exclude expert testimony (Dkt. No. 189) is DENIED.

The clerk of court is directed to transmit a copy of this order to all counsel of record.

Entered: August 22, 2022.

/s/ *Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge